## W. W. GILBERT *vs.* J. & J. G. AVERILL.

Where land is conveyed subject to a mortgage, it is the primary fund for the payment of the debt, and the grantee cannot bring a suit to have the mortgage alone canceled and adjudged satisfied, the bond remaining in the hands of an assignee, without making the obligor and mortgagor a party.

A. attended a public sale by the comptroller, and bid off a bond and mortgage deposited with the latter, under the act of 1838, in relation to banking, and paid the purchase money, but directed the auctioneer to put the sale down to B. ; and the bond and mortgage were duly assigned by the comptroller

Gilbert *v.* Averill.

to B. in pursuance of that direction; A. at all times afterwards disclaiming any interest therein, and in his answer alleging that the purchase was for B.; and the purchase money had been repaid to him by B. In a suit brought against A. and B. to have the mortgage discharged and canceled; *Held*, that A. was a competent witness for his co-defendant.

THE complaint alleged that in October, 1838, one Sylvester Gilbert gave his bond, in the penalty of $10,000, with a condition for $5000, payable at the time therein specified, to the president of the St. Lawrence Bank, for the purpose of organizing that institution, and also a mortgage on a farm of the obligor to secure that sum. That the same were accepted by the comptroller under the banking law of 1838, only as security for $3300; for which amount stock was received by the mortgagor. That the bank failed in 1841, and in June, 1842, the comptroller sold the bond and mortgage; that an arrangement was made between Sylvester Gilbert, the mortgagor, and James Averill, by which Averill was to bid off the bond and mortgage, and take an assignment of the same from the comptroller, as security for the amount he should pay upon the bid. That in pursuance of said agreement, James Averill bid off the bond and mortgage for $1100, but at his request the comptroller assigned them directly to James G. Averill. That the matter had so remained until August, 1850, when Sylvester Gilbert offered to pay to the defendant James Averill, the amount of the bid and interest; who said he had nothing to do with the bond and mortgage, but they belonged to James G. That on application to the defendant, James G. Averill, he disclaimed knowing any thing about it, and told Sylvester Gilbert he must settle with James Averill. That the amount of the bid and interest had been tendered to both of the Averills, who had refused the same and claimed that the defendant James G. was entitled to the whole sum of $5000 and interest from 1841. That James G. did not pay the amount of the bid; and that Sylvester Gilbert had been in possession of the premises since the mortgage was given. The complaint further stated, that in September, 1850, the plaintiff received a quitclaim deed of the premises from Sylvester Gilbert; and that he was the lawful owner in fee thereof, subject to the payment

of whatever sum was justly and equitably due to either of said Averills, for the payment of which one of them lawfully held the bond and mortgage. The demand of judgment was, that, on payment of $1100 and interest, to the defendants, or whichever of them was entitled thereto, the mortgage might be adjudged fully paid, satisfied, and discharged; and for costs; and there was a prayer for other and further relief. The defendants answered separately. James Averill put in issue nearly all of the principal allegations of the complaint; and also stated that he purchased the bond and mortgage as agent of James G. Averill, to whom it was assigned, and who had repaid to him the purchase money and interest.

The answer of the defendant James G. Averill was substantially the same, except that he admitted a tender; alleged that he owned and claimed the bond and mortgage; and that the purchase was made by James Averill for him. On the trial before Mr. Justice Willard, without a jury, at the St. Lawrence circuit, it appeared that James Averill bid off the bond and mortgage for $1100, telling the auctioneer to put it down to James G. Averill, and that the assignment of the bond and mortgage by the comptroller was made directly to James G. There was also evidence going to show, (among other things,) that the bond and mortgage were purchased under an agreement with Sylvester Gilbert to discharge them on repayment of the sum bid and interest. That the land was worth 5 or $6000 in 1842, and nearly twice as much at the time of the trial. The defendants excepted to the admission of Sylvester Gilbert as a witness; and also to the rejection of James Averill as a witness for his co-defendant, James G. Averill. The court gave judgment, that on the payment of $1100 and interest and costs, the bond and mortgage should be deemed satisfied, and discharged, and an entry of satisfaction of the mortgage be entered on the record. The defendants appealed.

*C. G. Myers,* for the defendants.

*A. B. James,* for the plaintiff.

Gilbert v. Averill.

*By the Court,* HAND, J. The conveyance of the mortgaged premises to the plaintiff, was by a quit-claim deed from the mortgagor; and the complaint alleged that he held them in fee, subject to whatever was justly and equitably due to one of the Averills; and for the payment of which the bond and mortgage was held. The land is clearly the primary fund for the payment of the bond and mortgage. (*Tice* v. *Annin,* 2 *John. Ch. Rep.* 128. *Bigelow* v. *Bush,* 6 *Paige,* 343. *Heyer* v. *Pruyn,* 7 *Id.* 465. *Jumel* v. *Jumel, Id.* 591. *Vanderkemp* v. *Shelton,* 11 *Id.* 28. *Halsey* v. *Reed,* 9 *Id.* 446. And see *Ferris* v. *Crawford,* 2 *Denio,* 595; *Cumberland* v. *Codrington,* 3 *John. Ch. Rep.* 229; *King* v. *Whitely,* 10 *Paige,* 465.) If by the terms of the deed the plaintiff was to pay the mortgage, and the amount thereof was deducted from the consideration money, it seems, as between him and the mortgagor, in equity, the plaintiff is personally liable for any deficiency. (*Halsey* v. *Reed, supra.*) As he gave but $1100, and the land is said to be worth about $10,000, it is probable such was the understanding. But it is sufficient that this land is primarily liable for the debt. That renders it necessary that Sylvester Gilbert should be a party; certainly, if the mortgage only, and not the bond is to be discharged. He is entitled to have the bond satisfied out of the land; and the mortgage should not be canceled without his being discharged from all liability. An estoppel by record should be mutual; and the decree between William Gilbert and the defendants, directing the record of the mortgage to be canceled, and the mortgage delivered up, would not be conclusive that the bond also had been satisfied; the latter being the principal debt, of which the mortgage is a mere security. A voluntary discharge of the mortgage by the assignee, might have the effect to discharge the obligor also; but these proceedings are between other parties and *in invitum,* and the decree must necessarily be specifically confined to the mortgage. I do not say that Sylvester Gilbert is a necessary party to a suit to have the bond and mortgage both given up and discharged. It would seem that he would have no occasion to complain, if he is entirely discharged of all liability, although in consequence of a decree

between others. But upon this point I express no opinion. The demand of judgment in this case only refered to the mortgage, and a decree affecting the bond was therefore erroneous. Probably it was inadvertently entered in this form.

Again, I think James Averill was a competent witness for his co-defendant. The evidence shows that he had no interest whatever in the bond and mortgage; and this accords with the pleadings. He bid them off at the comptroller's sale, and perhaps paid the purchase money; but he told the auctioneer to put the purchase down to James G. Averill, and the comptroller assigned them directly to the latter, and James Averill has always disclaimed any ownership, and clearly he had none. He was not jointly interested or liable with James G. Averill, and a separate judgment can be entered. (*Code,* § 397.)

I think there should be a new trial, with leave to the plaintiff to amend his complaint if he shall be so advised, upon payment of the costs of putting in the answers of the defendants.

Ordered accordingly.

[Schenectady General Term, January 3, 1853. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]